UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Case No. 1:11-cr-00147-ML |
| ROBERT O.  ROBINSON, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**I. INTRODUCTION**

On June 21, 2012, defendant Robert O. Robinson was found guilty of an eleven-count Indictment.  Count I charged Robinson and others with conspiracy to possess with intent to distribute and distribution of 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and 18 U.S.C. § 2.  Counts III through VIII charged Robinson with distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.  Counts II, IX, X, and XI charged Robinson with distributing 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2.

The Probation Officer calculated the defendant's offense level by beginning with a Base Offense Level of 32 pursuant to USSG § 2D1.1(c)(4), adding 2 levels for witness intimidation pursuant to § 2D1.2(b)(14)(D), and 4 additional levels because the defendant was an organizer and leader pursuant to §3B1.1.  The defendant had a total offense level of 38, a criminal history category of III, and a total guideline range of 292-

1

365 months with a restricted range of 240 months to life.[1] At sentencing, the

government recommended a term of imprisonment of 265 months; the defendant

requested the mandatory minimum sentence of 240 months. The court imposed a

sentence of 240 months imprisonment followed by a period of 120 months supervised

release. See Dkt. # 158. The defendant filed a direct appeal. On appeal, the defendant

argued that he was denied his Sixth Amendment right to counsel of his choice, and that

the district judge erred in refusing his requests for continuances. The First Circuit Court

of Appeals affirmed the convictions, finding no error in the district court's allowing the

defendant to represent himself at trial, nor in its denial of the untimely motions for

continuance. United States v. Robinson, 753 F.3d 31 (1st Cir. 2014). The defendant

subsequently filed a petition for a writ of certiorari to the United States Supreme Court.

The petition was denied on October 6, 2014. Robinson v. United States, 135 S.Ct. 313

(2014).

On September 29, 2015, the defendant filed a petition pursuant to 28 U.S.C. §

2255 to Vacate, Set Aside, Or Correct Sentence. See Dkt. #188. On October 26, 2015, the

defendant filed a Motion to Amend his original petition and the motion was granted.

See Dkt. #189 and Text Order granting the same. The defendant argues that: 1) his trial

counsel was ineffective for failing to give adequate advice regarding the government's

supposed eve-of-trial plea offer which the defendant inexplicably pegs at 10 to 13 years

---

[1] The defendant's restricted guideline range was twenty years imprisonment because on October 17, 2011 the government filed an Information Charging A Prior Conviction pursuant to 21 U.S.C. § 841. See Dkt. #45. On March 22, 2012, the government filed an Amended Information which did not change the applicability of the twenty year mandatory minimum. See Dkt. # 71. In addition, the defendant was sentenced to a concurrent sentence of 24 months for his violation of federal supervised released in Cr. 01-107-ML (formerly "T").

(which he claims he would have accepted had he known about it): and 2) his appellate counsel was ineffective for failing to raise, on direct appeal, his trial counsel's failure to request a lesser included offense instruction regarding the drug quantity required to establish the elements of the conspiracy count. For all the following reasons the defendant's petition should be dismissed.

## II. FACTS

The facts concerning the offense are taken from the Presentence Report ("PSR") and the opinion rendered by the First Circuit Court of Appeals.[2] The facts evolve around an ongoing conspiracy to distribute crack cocaine.

This case has its genesis in Talu's Café, a Woonsocket, Rhode Island bar from which the defendant ran the drug distribution conspiracy. Over the course of a three-and-a-half month investigation that began, in February 2011, ATF Special Agent Michael Payne, utilizing a confidential informant ("CI"), conducted ten controlled purchases of crack cocaine at Talu's Café. The defendant employed similar tactics during each buy. Upon arrival of the CI, the defendant would typically act through co-conspirators such as bartender Tonia Rawlinson, or bouncer Jason Roman to facilitate the transaction. By the end of the investigation, the CI had purchased a net total of 301.48 grams of crack cocaine from the defendant and his conspirators.

Law enforcement officials ultimately arrested the defendant on June 10, 2011. During a voluntary jailhouse interview, the defendant admitted he was a drug dealer, yet tried to convince Agent Payne that he only sold powder cocaine rather than crack

---

[2] United States v. Robinson, 753 F.3d 31 (1st Cir. 2014).

cocaine. Agent Payne testified that the defendant tried to convince him of such because he knew the penalties for distributing crack cocaine were much more severe. Rawlinson and Roman each corroborated Agent Payne's account, testifying that they had distributed crack cocaine on behalf of the defendant. Rawlinson so testified despite receiving threatening letters from the defendant urging her to give false testimony and for which the defendant received an obstruction of justice enhancement at sentencing.

At trial, the defendant endeavored to stall the proceedings in a number of ways, which ranged from requesting the judge recuse herself, to seemingly firing his attorney after the jury had been impaneled. The defendant initially hired Attorney Steven DiLibero, but sought to terminate the relationship after a couple months due to a "breakdown in communication." Though permitting the termination, the magistrate judge impressed upon the defendant the severity of the charges and the importance of having competent representation during all proceedings.

After multiple status hearings, the defendant eventually hired Attorney Matthew Smith.  At jury selection, however, the defendant voiced his displeasure with Smith's efforts, stating that "[h]e does things, and he doesn't even let me know." The court attempted to explain to the defendant that Smith was providing sound representation on his behalf. For example, Smith successfully suppressed some of the statements the defendant made to the police, as well as filing discovery motions which "resulted in the Government providing [the defendant] with a great deal of information." Unpersuaded, the defendant insisted on representing himself *pro se* despite the court's admonitions to the contrary. The court ultimately designated Smith as "standby

4

counsel" and he continued to provide the defendant legal assistance throughout the

trial and sentencing proceedings.  By and by, the defendant was convicted of all counts.

**III. ARGUMENT**

1. **The Defendant's Petition Is Timely Filed**

The defendant filed his motion to vacate, set aside, or correct sentence pursuant

to 28 U.S.C. § 2255 which states in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise subject to collateral attack,
> may move the court which imposed the sentence to vacate, set aside or correct
> the sentence.

28 U.S.C. § 2255.

The motion to vacate is required to be filed within one year after entry of final

judgment.  28 U.S.C § 2255(f)(1).   The defendant filed a petition for a writ of certiorari

to the United States Supreme Court.  The petition was denied on October 6, 2014.  The

defendant  had one year from that date to file a motion pursuant to 28 U.S.C § 2255.  See

United States v. Hicks, 283 F.3d 380, 387 (D.C. Cir. 2002.)  The defendant filed the

instant petition on September 29, 2015, and therefore it is timely filed.  Though timely,

however, his arguments are specious and fall wide of the mark.

2. **The Standard For An Ineffective Assistance Of Counsel Claims.**

The Supreme Court has established a two part test to evaluate ineffective

assistance claims.  See  Strickland v. Washington, 466 U.S. 668, 687 (1984); Lema v.

United States, 987 F.2d 48, 52 (1st Cir. 1993).  A party advancing such a claim has the

heavy burden of proving: (1) that his attorney's performance fell below an objective standard of reasonable effectiveness; and (2) that he was prejudiced as a result of his attorney's deficient performance. Strickland, 466 U.S. at 687. To meet this burden, the defendant must establish that his counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir.), cert. denied, 115 S.Ct. 517 (1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly deferential", and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (other citations and internal quotation omitted). The defendant cannot meet the Strickland standard on either of his proffered claims.

### 3. The Defendant Did Not Receive Ineffective Assistance Of Counsel During Plea Negotiation Stage Of The Proceedings.

The defendant incredibly posits that his trial attorney was ineffective because:

> The government initially extended a 20-year plea offer. Smith and I engaged in a terse discussion wherein he explained that by virtue of the 21 U.S.C. § 851 enhancement that had been filed by the government, the Court would be required to impose a mandatory minimum sentence of 20 years. Based on this information, I opted to reject the 20-year plea offer.
> On the morning that the trial was scheduled to commence, I was informed by Smith that the government had extended another plea offer which had removed the §

851 enhancement. Under the terms of the plea, I would be subjected to a sentence of 10-13 years. When I asked Smith how this plea would relate to my pending probation proceedings, he stated that we would address that issue when the time arose. The question had clearly agitated Smith because he instantly ended our brief conversation and told me that he would see me in the courtroom. At that point, he abruptly left.

See Defendant's Motion To Amend, Dkt. # 189, p.22.

The defendant's self-serving post hoc assertions are unsupported by the record and rest solely on the credibility of the defendant and require the Court to accept the defendant's affidavit as true. As to the latter, this Court has already found that the defendant obstructed justice by attempting to get a witness to provide false testimony and or not testify against him. See PSR at ¶ 20. The defendant's blatant mischaracterizations, falsehoods, felonious past, and well established trial histrionics, make the defendant's assertions in the affidavit attached to his Motion to Amend unbelievable at best.

In this case, as the record indicates, the defendant was originally offered a plea agreement which, among other things, offered the defendant a sentencing recommendation from the government of the higher of the mandatory minimum, or the guideline range as computed by the Court. See Transmittal Letter dated March 23, 2012 and Unexecuted Plea Agreement attached as Exhibit A. This initial plea offer was never accepted by the defendant. Instead, based upon the defendant's witness tampering while the plea offer was pending, a revocation of the plea offer was transmitted to the defendant's counsel with the only open issue being whether the

government, in its sole discretion, was going to file a second § 851 Information and increase the defendant's mandatory minimum sentence to life imprisonment. <u>See</u> Letter dated April 6, 2012 with attachment and attached hereto as Exhibit B. Thus the claim that , on the "morning trial was to commence " the government would then offer the defendant a plea offer of "10-13 years," is incredible.

Trial counsel's performance did not fall below the <u>Strickland</u> standard because the government did not offer the defendant a second plea agreement of ten to thirteen years. Furthermore, even if a second plea agreement had been offered, the defendant cannot establish that he was prejudiced by his attorney's performance. To establish prejudice in the context of a rejected plea offer, a defendant must show that but for counsel's deficient performance, (1) the plea would have been accepted and the prosecution would not have withdrawn it in light of intervening circumstances, (2) the court would have accepted its terms, and (3) that terms of the offer would have been less severe than under the judgment and sentence that in fact were imposed. <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1385 (2012).

There is ample evidence that suggests the defendant was adamant about going to trial and would not have accepted a second plea offer regardless of his attorney's recommendation. On August 2, 2011, the defendant filed a *pro se* Motion to Dismiss the then Complaint that stated in part, "[f]oremost among the reason for waiving these rights was to engage the government [i]n plea negotiations. Those negotiations have not been fruitful and were never the object of this defendant's direction he wanted in his defense." <u>See</u> Dkt. # 10. On June 14, 2012, after jury selection and four days before the

8

start of trial, the defendant filed a *pro se* Motion to Dismiss Attorney citing a similar

grievance with Attorney Smith. See Dkt. # 106 ("Mr. Smith has not fought for my rights

he rather just come at me [sic] with pleas and tried to force me into taking them."). The

defendant also indicated his desire to go to trial in two letters to Tonia Rawlinson. The

defendant first stated, "I am still going to trial even if your gonna take the stand on me .

. . ," see Govt. Ex. 46,  and subsequently stated, "believe me I am going to Trial  . . . ,"

see Govt. Ex. 50. This evidence, coupled with the record's indication of the defendant's

overall obstinateness with his attorneys, demonstrates that the defendant had no

interest in considering a plea agreement and thus the Lafler requirements have not been

met.  For all the foregoing reasons, the defendant's first claim should be denied.

**4.      The Defendant Did Not Receive Ineffective Assistance Of Counsel During The Appellate Stage Of The Proceedings.**

As acknowledged by the defendant in his amended motion, proof of ineffective

assistance of counsel for failure to raise an issue on appeal requires the petitioner to

show that the omitted claim "was so obvious and promising that no competent lawyer

would have failed to pursue it."  Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st

Cir. 2005) (quoting Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).  The

defendant cannot meet this extraordinarily high burden because it was reasonable for

his attorney to omit the claim in question.  In this case, the allegedly required

trifurcation of 21 U.S.C. § 841 into lesser offenses as dictated by Alleyne v. United

States, 133 S.Ct. 2151 (2013) is a red herring.  The government charged and proved to

the jury the highest crack cocaine threshold which was 280 grams or more for the

defendant's crime, see Alleyne, 133 S.Ct. at 2155, and thus the attorney did not err by choosing not to raise the issue on appeal. Since the purported error would have not reduced the chargeable amount of crack cocaine below 280 grams, the defendant cannot show that he was prejudiced as a result of his attorney's allegedly deficient performance. See Strickland, 466 U.S. at 687. If a claim of ineffective assistance can be disposed of on the ground of lack of prejudice, the court should do so. Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984).

The defendant first asserts prejudice resulting from the CI allegedly "tampering with the evidence" by allowing co-conspirator Roman to have some of the crack cocaine purchased during a buy. By giving Roman some of the crack cocaine, the CI only served to lessen the aggregate total grams on which the defendant could be convicted. Thus, this action by the CI would have benefitted rather than prejudiced the defendant.

The defendant also submits a bizarre claim of impropriety resulting from the CI's opportunity to be alone and unmonitored with the drugs while en route to meet Special Agent Payne. Even though there may be gaps in the chain of the government's custody of a certain piece of evidence, such gaps factor into the weight given to the evidence rather than its admissibility. See United States v. Anderson, 452 F.3d 66, 80 (1st Cir. 2006). The defendant offers no plausible explanation as to why or how this small gap in custody should alter the weight given to the evidence. Such bald assertions, devoid of any argument as to how they prejudiced the defendant, do not rise to anywhere near Strickland's proscribed standard. See Strickland, 466 U.S. at 694 ("[T]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.").   Indeed, as the First Circuit Court of Appeals noted in reciting the evidence, "The last piece of the puzzle was the testimony from the two chemists who analyzed the drugs the CI bought at Talu's.  The chemists confirmed those substances tested positive for crack, and stated the weight of the drugs." United States v. Robinson, 753 F.3d at 35.

Counsel is entitled to exercise professional judgment, see Cirilo-Munoz, 404 F.3d at 530, and even make mistakes so long as they do not render counsel incompetent, see Arroyo, 195 F.3d at 55. The omission of an Alleyne claim on appeal, however, is a result of neither mistake nor incompetency. The factual distinctions and lack of prejudice more than justify counsel's decision not to raise the issue.  And besides, as the defendant himself acknowledges in his Motion to Amend while referring to his trial counsel and the state of the evidence in this case, "… [counsel] was cognizant through his perusal of the discovery that the government possessed compelling evidence of Petitioner's guilt."  Defendant's Motion To Amend, Dkt. # 189, p.9.

## IV.    CONCLUSION

For the foregoing reasons, the defendant's petition should be dismissed.

Respectfully submitted,

PETER F. NERONHA
United States Attorney

/s/ Richard W. Rose
RICHARD W. ROSE
Assistant U. S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
richard.rose@usdoj.gov

CERTIFICATE OF SERVICE

On November 6, 2015, I caused the within Memorandum Of Law In Support Of Government's Objection To Defendant's 28 U.S.C. § 2255 Motion To Vacate, Set Aside, Or Correct Sentence, to be filed electronically and it is available for viewing and downloading from the ECF system.


Notification by first class mail, postage prepaid was sent to:

Mr. Robert O. Robinson,
#05065-070
Federal Correctional Institute, Schuylkill
P.O. Box 759
Minersville, PA 17954


/s/ Richard W. Rose
RICHARD W. ROSE
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
richard.rose@usdoj.gov